Shanghai Meohao v. Leviton MFG Case No. 61272 Shanghai Meohao Electric Inc. v. Leviton MFG Shanghai Meohao Electric Inc. v. Leviton MFG Well, but that's not quite true, is it? I mean, the language that he relied on appears in the summary of the invention section, doesn't it? Well, Your Honor, unfortunately not completely. But some of it does. Well, some of it does, but in the summary judgment decision, the court omitted the second clause of the summary of the invention. The summary defines the invention, which is a reset lockout that can only be moved by an electrically operated system. And the summary of the invention states— Which—is the specification the same for all the— Oh, no, Your Honor. Which one are you doing? The patent number 6040967 and 6381112 have substantially the same specifications. OK, so what language are you referring to? Well, the first paragraph, I believe, right under the summary— Which patent are we looking at, the 967? 967 or 112. If Your Honors would look at the 112 patent, I believe you'll see, beginning at the bottom of column 1, extending over to column 2— There is a subheading called summary at the bottom of column 1. And the opening paragraph reads, The present application relates to resettable circuit-interrupting devices that include a reset lockout mechanism, which prevents resetting between input and output conductors if the circuit interrupter used to break the connection is non-operational, or—and this is a thought that the Honorable District Court omitted in its summary judgment decision—if an open, neutral condition exists. So there are two parameters by which the reset lockout operates. The first is whether the circuit interrupter is non-operational, and the second is if there is an open, neutral condition. So what you say is that we should read this as disjunctive rather than conjunctive. Yes, Your Honor, I believe the word is or, and I believe that was the intention of the patent, that you have two possible means by which the reset lockout can be—or two possible conditions under which the reset lockout will not permit resetting. Either that the circuit interrupter is non-operational, or that it is an open, neutral condition. If the patent had said and here instead of or, if the written description used the word and instead of or, would you agree that the District Court was correct? I would need to see the entire context in which—are you saying— The same entire— —everything that just says and? Everything's the same except the word and instead of or is in there. Then it would not be conjunctive. I mean, it would be conjunctive, and you would have to have a situation where it was both non-operational and— So the District Court would have been correct? I believe that's the case, but I believe, Your Honor, if you look at Claim 22 of the 112 patent, there the claim specifically recites the open, neutral conditions as a condition that prevents reestablishment of electrical continuity. Well, except that you didn't have the last paragraph of Claim 22, the wherein paragraph. Well, Your Honor, the wherein paragraph is part of it, but I mean, this is a claim where you have to look at—which is the usual way in which you construe a claim. You look at every one of the required elements, and this claim requires that the circuit interrupter will prevent reestablishment if the electrical conductor is not connected to a neutral line, which is the definition or description of the open, neutral condition. Except that the District Court is, I think, construing Claim 22, the wherein clause, as requiring it also be operational as well as not connected to an open, neutral. Well, Your Honor, if you look at what that clause says, again in its entirety, it says, activates the circuit interrupter to be in the operational state to move the reset lockout device to a reset position. So the operational state that the circuit interrupter must be in is that which will allow it to move the lockout to a reset position. And if you look at the specification, it describes the situation that that claim is intended to encompass. And if Your Honors will look at column 3, beginning at line 45, where it speaks of embodiments where the trip mechanism uses power supplied to the device in order to activate. What the Claim 22 is saying is that when you have a circuit interrupter that has to be operated, I'm sorry, when you have a trip mechanism as part of a circuit interrupter that requires power supplied to the device, if that power is not available, which is exactly what occurs if there is an open, neutral condition, then it will not reset. And that's the condition that the Claim 22 is attempting to describe and define. And that's why all that's required here is to test for whether there's an open, neutral condition. And testing for an open, neutral condition means that there is a situation where the device cannot be activated because there's no power to the trip mechanism. And the same thing is shown in Claim 5, Your Honor, where Claim 5 of the 112 patent talks about a reset lockout that prevents reestablishment of electrical continuity if the circuit interrupter is non-operational. Non-operational means that any part of the circuit interrupter will not work. The specification defines two parts of the circuit interrupter. One, a sensing circuitry, and two, the tripping mechanism. So if either one of those do not work, then the device is non-operational. And then if you look at dependent Claim 12, dependent ultimately on Claim 5, you see that it describes a situation where the trip mechanism is non-operational as a dependent claim to Claim 5. Claim 13 describes a situation where the reset lockout cannot occur because the sensing circuitry is not operational. Claim 5, therefore, in order to encompass both of these two alternative dependent claims, must also be alternative in that any part of the circuit interrupter can be non-functional or non-operational. Therefore, A, the trip mechanism is non-operational, and B, the sensory circuit is non-operational. Yeah, I understand what you're saying. And it's true that the doctrine of claim differentiation would support you for the reasons that you argue there. But that's only a presumption. It's not an absolute rule. And this is not a particularly well-drafted patent. You might or might not agree with that. But the patentee has to bear the burden of having a patent that's not well-drafted. And the specification here says the district court is clear that it requires both. Well, the point is, Your Honor, it is a presumption that must be rebutted according to the case law of this court. And there is no showing that the presumption is rebutted as to what is intended to be meant by this, where the independent claim must be broader than any of the claims dependent on that independent claim. And it's submitted that that is not the case here, that there is no discussion anywhere in the district court's decision that even considers rebutting that presumption. So therefore, those two claims, at the very least, should be found to be infringed, or at least the summary judgment of non-infringement should be reversed. And the remainder of the findings of the district court, each of the individual four elements also should be reconsidered in light of the language of the individual claims. Okay. Wait, let's hear from the other side. Thank you, Your Honor. Mr. Nabb? Yes, good afternoon, Your Honor. I'm Gary Nabb for Shanghai Mayhaw, a police court. Judge Davis correctly construed the claims and correctly found based on that. But they're right that claim differentiation, at least with respect to claim five, supports their position, isn't it, aren't they? In this case, it's not quite clear to us, Your Honor, claims 12 and 13 do recite further limitations. In other words, the circuit interrupter having a trip mechanism, the circuit interrupter having sensing circuitry, those are more specific descriptions of the circuit interrupter. So arguably, claim differentiation may not support their position. It may not? Well, we would say it does not because there are further limitations in those claims. In other words, claims 12 says the circuit interrupter, one of the claims says the circuit interrupter has a trip mechanism and sensing circuitry. And then claims 12 and 13 go on to describe what the sensing circuitry and the trip mechanism do. So in a way, they are further defining the circuit interrupter of claim five. So we would say claim differentiation does not. I don't understand that. I don't understand what you're saying. Claim five only refers to a circuit interrupter generally. Claim seven says the circuit interrupting device wherein the circuit interrupter includes a trip mechanism for breaking electrical continuity between said first and second electrical conductors and sensing circuitry for sensing the occurrence of said predetermined condition. So then that's further defining what the circuit interrupter is. Then claims 12 and 13 describe the circuit interrupter and the trip mechanism characteristics. So you've gone from a level of generality in claim five to a level of specificity in claims 12 and 13. How else are you going to cause electrical discontinuity except by a trip mechanism or by finding the circuitry non-operational? Conceivably, there could be a circuit interrupter that does not have a trip mechanism in sensing circuitry. I don't know either, Your Honor, but this is the way they've drafted the claims. Well, that's the problem. If you don't know of any, if claim differentiation really does support what they're saying. It's not an absolute rule. You may prevail because of the specification, but they do have that one thing going for them, don't they? Your Honor, I would agree. I would agree that that does appear to support their position generally. I think it's not crystal clear how these claims relate to claim five. But even if it did, claim differentiation, as you say, is not an absolute rule. You still have to read claim five based on the plain meaning of the claim. That's exactly what Judge Davis did. As a matter of fact, he characterized their arguments as arguments that only a lawyer could make. And they quibble about what operational and non-operational mean. Claim five unambiguously states that a reset lockout that prevents reestablishment of electrical continuity between said first and second conductors, if said circuit interrupter is non-operational. Judge Davis found that non-operational means it doesn't work. Very plain meaning of the claim. And he found support in the specification for that definition in the 112 patent, which describes non-operational means that both the sensing circuitry and the trip mechanism are not working. So claim five, just based on its plain meaning, means that you have a reset lockout that prevents reestablishment of continuity if the circuit interrupter is non-operational. Okay, I understand what you're saying. Some of these claims don't have operational or non-operational in them, right? That's correct. What about those claims? As to those claims, Judge Davis really, there are three independent bases for non-interpretation here. First of all, the very definition of the term reset lockout, which I think Levitin now concedes is a means plus function limitation. They have not argued on appeal that it's not. Judge Davis correctly looked at the specification and construed reset lockout. But you, in 112.6, you don't look to the specification to define the function. I mean, you've got to find the function in the claim language, right? Right, you find the function in the claim language, then you look to the structure. But Judge Davis found that, based on the patent, that the reset lockout, just that structure, prevents continuity if the circuit interrupter is non-operational or if an open neutral exists. He says it has to perform both functions. And the problem is they're arguing that the specification language, which we can look to to interpret the claim language, says or rather than and. Yes. So what's the answer to that? The or means that it has to do both. Because the way these things work is that when you reset the device claimed in the patent, it activates the sightseeing circuitry and the trip mechanism. And if either the circuit interrupter is not able to detect a ground fault or if there's an open neutral or if it's reversed wired, if any of those conditions exist, you're not going to be able to reset the device. And if you look at the portion that Mr. Magidow is referring to. So why does that have to be true? I mean, you could have a device that only was designed to prevent resetting in the open neutral condition and it didn't, and I guess the accused device falls into this category, doesn't provide you complete protection against a non-operational sensing system. Right? That's correct. So, you know, why isn't it sufficient that the patent performs either one of the functions? Because the patent only describes a device which will perform both functions by the very nature of the invention. The very nature of the invention is that when you push the reset button, you activate the circuit interrupter, the entire circuit interrupter, the sensing circuitry. It won't reset unless it's safe. Pardon me? It won't reset unless it's safe. Unless it's safe, unless it's able to detect a fault. Inherent in that is the fact that also if there's an open neutral, it cannot be reset. Why does it have to do both of those things? It provides some protection if it does one or the other, right? Right, but the invention as described, and we would argue it's claimed as well, does both. Yeah, but that's the question, is whether the invention as described does both. And they say no, because it says or, and not and. Well, the question then becomes, what does or mean? And to us, or means it does both. If it's disjunctive, if they're right and we should read this as being disjunctive, you're wrong, right? Well, if it's disjunctive, first of all, we wouldn't be wrong on the ultimate merits. You would still have to find non-infringement of all the claims for some basis, and you'd have to deny the summary judgment motion on claim 112, claim 22, for other reasons. I hadn't thought that your argument required reading or to mean and, which it just doesn't do. In this particular case, we read or as meaning it does both. You read or as meaning and. Yeah, it will not reset if either of those conditions exist. Either is not and, it's or. Well, yeah, you're right. In other words, we read it so that you have a circuit interrupter, and it will break. You cannot reset the device if it's non-operational or if an open neutral exists. And if you have a device that only resets if an open neutral exists, but will reset if it's non-operational. I guess your argument should be that if the word and were in there, it would only prevent resetting if both bad conditions existed. Whereas it's designed to prevent resetting of either one of the two conditions. That's correct. It wouldn't make sense to design a device that had to have both an open neutral condition and a non-operational condition in order to prevent resetting. In other words, it would have to be really bad before the resetting would be prevented. Well, that's correct. And there's no embodiment of the patent that describes any embodiment where you can reset it if there's an open neutral. But you would prevent resetting if it's non-operational. So what is the distinction? I had thought that a significant aspect of your argument was supposed to be that the way your client's device works was actually in the prior art, which would certainly be an or rather than an and. Well, it's in the prior art only if you interpreted the patent to mean that you're prevented from resetting if there's an open neutral, but if the circuit interrupter is defective, you can still reset it. That's their argument. They're trying to interpret the thing broadly. And yes, there would be prior art that would make the patent invalid in that respect. But when you look at the patent... And why is it that the accused device don't meet the limitations of the claim? The Mayhaw device does not meet the limitations of Claim 22 for a number of reasons. First of all, you don't activate our circuit interrupter at all. And activate the circuit interrupter, again, we're not relying on a preferred embodiment or trying to construe the phrase narrowly. We are taking the phrase, what does it mean to activate the circuit interrupter, and then going to the specification as a guide for what that means. And activate the circuit interrupter means exactly what common sense would tell you in the context of this invention. It means activate both parts of the circuit interrupter so that it's able to detect the ground. So in the accused device, basically to put it in simple terms, it doesn't provide complete protection. That's right. Our device bypasses the sensing circuitry. So that if our sensing circuitry is defective, if it didn't work, or if you took it out, I can get electrocuted. You can still reset the device. It's an added safety feature that Leviton's invention has that our device is lacking. And nothing in the permanent injunction would stop the patentee from so describing your client's product. Unsafe. The permanent injunction, we would disagree with that characterization, but the permanent injunction preserves their First Amendment rights. It allows them to make statements about the litigation. What was the predicate when the district court judge was asked to enter a permanent injunction? What were the arguments made in favor of entering a permanent injunction? The arguments, the way that happened... Was there a written presentation to the judge saying, here, judge, are the reasons why we think a permanent injunction should be entered? No, this was by agreement. They filed a motion. The judge then said, and the order is in the record, I think that the... Oh, I'm sorry. First of all, the judge entered the order. He basically adopted our proposed order. Right. When you filed your proposed order, did you file a memorandum of law in support saying, here are all the reasons why we believe we're entitled to a permanent injunction? Your Honor, we filed a memorandum in support of our motion for summary judgment. As part of that motion for summary judgment, there was a proposed order. But you never addressed the four traditional factors for the issuance of an injunction. Is that correct? No, we didn't go through the traditional factors. Irreparable harm. Why bother? Pardon me? Why bother? Well, we submitted a proposed order. We thought it was fairly straightforward. If the court were to agree with us in terms of the declaratory judgment, then the court should prevent Levitin from going off and suing our customers. Did they oppose the injunction? What they did is, in their summary judgment papers, neither party really addressed the issue of the language of the injunction. The court entered the order as we had proposed having granted our motion for summary judgment. Then Levitin filed a motion for a show cause as to why that order should not be granted, saying that it was overly broad, that it would interfere with their First Amendment rights, and so forth and so on. The judge then, in a very short order, which is in the record, said, I find that this is on page A3404. 3404? Yes. And so then Judge Davis issued a one-page letter, a memorandum, saying the motion for show cause is hereby denied. That said, I agree with Levitin that the form of order entered in this case lacks the specificity and precision that it has a right to insist upon. Obviously, I simply employed the form of order propounded by plaintiff here. Nevertheless, I see no reason for the sort of protracted contentiousness that has characterized the Levitin cases. What does that mean? I can only read into the judge's words. The judge Davis had both observed this case, in which there were three suits filed against our customers. That's why we filed a declaratory judgment action with the district court in the first place. The judge had also presided over earlier litigation involving another patent, the 894 patent, which has now expired, in which USI was a co-party in that case, and had observed, again, multiple customer lawsuits having been filed by Levitin across the country. Well, that may be the ground for an injunction, but I don't understand how we can just enter an injunction of this breadth without addressing the four traditional factors. As I understand, what is it, Fourth Circuit law? You're supposed to do that. And I'll be candid with you. I don't find the all-written argument to be very convincing. As I understand Fourth Circuit law, the judge has to address the four factors, and he didn't. Well, I have two responses, Your Honor. First of all, the language of this order was actually agreed upon. So Judge Davis issued this memorandum. He told the parties, go back and come up with an order which has acceptable language for both parties in terms of the scope. The parties did that. There were extensive negotiations. The amended order reflects that in terms of what they can and can't say, what they can and can't do. That order was then submitted to the court without any— And I would say, first of all, when you have an agreement between the parties as to scope of the injunction, I don't think you need a predicate. I think the predicate has been set there. And Levitin could have come back and said, Your Honor, we don't think there should be an injunction at all. They didn't. They said the parties said this is the appropriate form of the order, and the court entered the order. We do believe, though, that in the cases that we've cited, in addition to the all-written statute, there is a declaratory judgment statute. The Supreme Court case you cite is a paradigm example of someone who received a ruling that their patent didn't cover something, and then they continued to sue people, and then I guess the third time out, there was also a record there of customers who were refusing to deal with the person because of the threat of the lawsuit. Those facts aren't here, right? What you have is a past course of conduct in which Levitin had repeatedly sued customers of the manufacturer for infringement in multiple lawsuits across the country. Well, right, and the injunction that was entered allows them to continue litigating those lawsuits. The existing lawsuits, but not to file new lawsuits against them. Well, that's right, but has Levitin indicated any interest or desire to file new lawsuits? I don't think they've indicated one way or another. Shouldn't they be given an opportunity to say, we have no intention to file any more lawsuits against a similar or like product? I would argue no, Your Honor, where there is a declaratory judgment and the manufacturer has obtained a declaration that a product doesn't infringe, I think it is within the inherent power of the court, even sui sponte, to issue an injunction which says no more lawsuits against the manufacturer's customers. Thank you. I think we have... Can I ask one more question? You said there were two reasons apart from the All Writ Statute. One was that they agreed to the scope of the injunction. What was the other one? The declaratory judgment statute itself provides jurisdiction for the court to issue other orders in aid of its declaration. We've cited cases to that effect in which courts under the Declaratory Judgment Act have issued orders, again, even sui sponte, which basically make sure that the declaration is adhered to and that the court affords full relief and importance with its declaration of the rights of the products. Thank you. Thank you, Mr. Hath. Your Honor, on the issue of the infringement of the manufacturer, the prior art only had devices that, when you pressed the reset button, a purely mechanical operation occurred, which would not in any way inform whether there was any kind of a problem with the operation of the device. This device that was invented and assigned to Leviton is the first one. You press a button and you close a circuit, and that circuit must have power in order to reset. And that is why this opening summary should be found to be disjunctive rather than conjunctive. There is no power if there is an open neutral. Therefore, it will not work. The alternative is, even if there is power and the system does not work, in the most preferred environment, it will also test for that. But certainly, the intention was that it, at the very least, tests for an open neutral. And an open neutral is not a trivial condition. An open neutral is one where the user is lulled into complacency, believing that there is no power in the product that he is using, because it does not work. But if he touches a live wire, he can be electrocuted, because there is a high voltage coming out from the phase line, as is explained in our papers. So therefore, it is critical that, at the very minimum, there be a test for an open neutral condition. And that is why it is not just part of the operation of the system, and it is not something that was part of the prior art. It is the first time that this concept has been worked out and presented to the public, and this is the basis for this invention, that there is a requirement that there be power in order to reset. Having consented to the permanent injunction, why shouldn't we treat you to have waived any complaints about the injunction? Your Honor, we did not consent to the injunction. We made a motion after the injunction was issued, without a basis, in order to show cause, that it should be removed. Did you file a memorandum of law in connection with your motion to strike? Yes, Your Honor. Is that in the record? I didn't see it. I don't know if it's in the appendix, but it should be in the record, Your Honor. And in that motion to show cause, you objected to any injunction? Yes, we did, Your Honor, because we argued that there was no showing that there was any need for an injunction. There was no basis for thinking that the Leviton would violate the normal rule that when a particular patent is found not to be infringed by a product, you then go out and sue other people. The Leviton had no intention of doing that, and there was never any evidence in the record contradicting that intention of the Leviton. What's the order here? There's a stipulated order, then the show cause, or what's the chronology? Well, what happened was we made our order to show cause. The court then ruled, no, I'm going to issue an injunction. I want you to agree on the form of the injunction. Oh, and then you stipulated. Then we settled the order, as you would normally do in the ordinary course of practice. To argue again, the court could very well find us in contempt. The court had made its ruling. And all we did was settle on the order in the terms that we felt was the least embarrassing to the client because that was improperly granted and should not have been part of the record. And you say if we call for the record, we will find a memorandum of law. The other side asked for an injunction, right? And the injunction that's at page one of the record was issued or was handed out, the order, the very short order? Yes, Your Honor. There was a letter order. You'll see on A3389 of our appendix, there's the beginning of the order, of the order to show cause, but we did not include a copy of the brief. But a copy of the brief was submitted, and it just wasn't specifically argued because we didn't know how to argue it. There was nothing that we could argue. So you say there's a memorandum that was attached to the motion that's at A3389? Yes, Your Honor. In that paper, in that brief, we argued that there was no basis for it. In accordance with Fourth Circuit law, there's a requirement that you show a history. That could be the basis for believing that the injunction is required, and there was no basis for that. Anything else? No. Anything else? Okay. Thank you. Thank you both. Mr. Magidow, Mr. Nath, the cases are going to do submission.